UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                             :

NELYA DEYKINA,                       :       12-CV-2678 (ARR) (CLP)
                                               :

                  Plaintiff,        :       <u>NOT FOR ELECTRONIC</u>
                                                 :       <u>OR PRINT PUBLICATION</u>

        -against-                        :
                                               :       <u>OPINION & ORDER</u>

JAMES CHATTIN,                     :
                                               :

                  Defendant.       :
                                               :
------------------------------------------------------------------- X

ROSS, United States District Judge:

      Plaintiff Nelya Deykina brings this diversity suit seeking damages for personal injuries that she sustained when she slipped and fell on a staircase at premises owned by defendant James Chattin. Now before the court is defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

      The following facts are undisputed.[1] Plaintiff is a resident of Brooklyn, New York. Dep. of Nelya Deykina ("Pl. Dep."), Dkt. #32, Ex. C, at 4. Defendant is a resident of Warminster, Pennsylvania. Dep. of James Chattin ("Def. Dep."), Dkt. #32, Ex. D, at 4. Defendant owns a house in the Pocono Mountains located at 657 Old Stage Road, Albrightsville, Pennsylvania. Def. Dep. 7. Defendant purchased the house with his wife in 2007, and they use it as a vacation

---

[1] Defendant has provided a statement of undisputed facts accompanying his motion for summary judgment, pursuant to Local Rule 56.1. Dkt. #32, Ex. 1. Plaintiff has included a Local Rule 56.1 statement with her opposition but has not provided any paragraph-by-paragraph responses to defendant's Local Rule 56.1 statement. As defendant argues in his reply, where plaintiff has failed to oppose the facts in defendant's Local Rule 56.1 statement by citation to admissible evidence, the facts are deemed admitted. Def.'s Reply Mem. of Law ("Def.'s Reply"), Dkt. #33, Ex. 1, at 1-2; see <u>Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.</u>, 135 F.3d 831, 835 (2d Cir. 1998). I note, however, that the relevant facts regarding plaintiff's fall are essentially undisputed. The parties' disagreements relate to the interpretation of expert reports, the relevant legal standards, and the application of those legal standards.

home and rental property. Id. at 13-14.

        Plaintiff's daughter Olga Deykina, who is also a resident of Brooklyn, rented defendant's property in the Poconos for the month of July 2011. Pl. Dep. 7-8, 13. Olga Deykina and defendant signed a "Rental Agreement" specifying that seven adults and three children would reside at the premises from July 1, 2011, through July 31, 2011. Decl. of Kelly E. Wright ("Wright Decl."), Dkt. #32, Ex. E, at 3. A provision of the rental agreement entitled "Repairs" states: "In the event of any problem, please call the Property Owner immediately. We will make a reasonable effort to have any necessary repairs made as soon as possible." Id. at 2. Plaintiff testified that her daughter rented the property for use by family members and friends. Pl. Dep. 14-17. Plaintiff went to the home on July 2, 2011, with her daughter, son-in-law, and granddaughter. Id. at 16-17. Plaintiff testified that she was invited to join the family to help with babysitting her granddaughter and did not pay any portion of the rent. Id. at 18.

        On the morning of July 5, 2011, at approximately 9 a.m., plaintiff fell while going down the stairs connecting the first and second floors of the house. Id. at 12, 18. The stairs have a wall and handrail on the left side going down and are open on the right side. Id. at 23-24. Plaintiff testified that she was holding onto the handrail with her left hand, and when she was about "two or three" steps from the bottom, she "slipped" and turned around to try to grab the handrail. Id. at 32-33, 41. Plaintiff "wasn't able to reach" the handrail, then she fell and hit her back against the bottom step and hit her head against the wall. Id. at 33.

        After plaintiff fell, family friends who were staying at the house came to help plaintiff back up the stairs. Id. at 44. Plaintiff testified that she felt "severe pain" in her back and was not able to lie down or sit down. Id. at 45-46. Either that evening or early the next morning, plaintiff went to the emergency room of a nearby hospital. Id. at 45-46. After performing an MRI and x-

rays, hospital staff told plaintiff that she had a "compression fracture of the spine" with a broken piece of vertebrae and gave her pain medication. Id. at 47. After plaintiff returned to her home in Brooklyn in August 2001, plaintiff's primary care doctor referred her to Coney Island Hospital, where multiple surgeons told her that surgery on her back could not be performed. Id. at 49-51. Plaintiff also went to a physical therapist in Brooklyn "three or four times," but he told her that he was unable to help her. Id. at 52-53. Plaintiff continues to experience "bad pain" in her lower back that is "almost constant." Id. at 56-57. Plaintiff uses a cane, cannot stand for more than an hour or walk more than two or three blocks without resting, cannot sleep on her side, and takes painkillers when needed. Id. at 54-58. Plaintiff testified that she never experienced difficulty walking or used a cane prior to the fall on the stairs. Id. at 26-27.

Defendant testified that the house was already constructed on the site when he purchased the property in 2007, and no governmental or private entity conducted an inspection when he purchased the home. Def. Dep. 8-9, 49. He stated that he has made no major renovations to the house since he purchased it, and specifically that he has made no repairs or alterations to the stairs or handrail. Id. at 9, 24, 44-45. Defendant testified that he never received any complaints about the handrail or was aware of anyone having problems using the handrail prior to July 6, 2011. Id. at 50. He also stated that Olga Deykina had not made any complaints to him about conditions on the property prior to July 6, 2011. Id. at 55-56. Defendant never went to the property while Olga Deykina and her family were staying there and never met plaintiff. Id. at 59.

On May 29, 2012, plaintiff brought this suit pursuant to the court's diversity jurisdiction. Compl., Dkt. #1. Plaintiff alleges that defendant "did cause, permit and/or allow a dangerous, hazardous, defective, unsafe and/or unfit condition to become, remain and/or exist at premises located at 657 Old Stage Road, Albrightsville, Pennsylvania, more specifically, the interior

staircase." Id. ¶ 4. Plaintiff asserts that she slipped and fell on the staircase "due to lack of handrails on either side and unevenly constructed steps" and sustained "severe, serious and personal injuries" as a result. Id. ¶¶ 5, 8. Plaintiff seeks damages "in an amount that exceeds the monetary jurisdiction of all lower Courts which otherwise might have had jurisdiction over this matter." Id. ¶ 11. Following discovery, including depositions of plaintiff and defendant and expert reports by engineers for each side, defendant brought the instant motion for summary judgment. Dkt. #32.

## DISCUSSION

### I.      Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); accord

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

## II.      Choice of Law

As an initial matter, the court must determine which state's law governs plaintiff's tort claim. Plaintiff argues that the court should apply New York law, while defendant contends that the court should apply Pennsylvania law.

Because jurisdiction in this action is based on diversity of citizenship, the court must apply the choice of law rules of New York, the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); accord Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999). Under New York's choice of law rules, the first question a court must address is "whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Ins. Co., 613 N.E.2d 936, 937 (N.Y. 1993). Where the laws at issue are not in actual conflict, the court applies New York law. Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) ("It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law

analysis."); Simon v. Philip Morris Inc., 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000) ("A court is free to bypass the choice of law analysis and apply New York law in the absence of a material conflict."). If the relevant states' laws are in conflict because they provide different substantive rules, the court must proceed to the second step of the analysis and apply the law of the forum that has "the greatest interest in the litigation." Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 14 (2d Cir. 1996) (citing Neumeier v. Kuehner, 286 N.E.2d 454, 457 (N.Y. 1972)).

In this case, there is no actual conflict between Pennsylvania and New York law. Plaintiff's theory of tort liability rests on the contention that the staircase on defendant's property was structurally defective and that this defect caused plaintiff's injury. The same substantive standards govern this type of claim under either Pennsylvania or New York law.

Under the law of both states, an out-of-possession landlord is not liable for personal injuries sustained on the property unless the landlord retains control over the leased premises. Ott v. Unclaimed Freight Co., 577 A.2d 894, 895 (Pa. Super. Ct. 1990) ("As a general rule, a landlord out of possession is not liable for injuries sustained by persons on his or her property unless the landlord has retained the right to control the portion of the premises on which the injury occurred.") (quoting Oswald v. Hausman, 548 A.2d 594, 600 (Pa. Super. Ct. 1988)); Dominguez v. Food City Markets, Inc., 756 N.Y.S.2d 637, 639 (App. Div. 2003) ("An out-of-possession landlord is not liable for personal injuries sustained on the premises unless the landlord retains control of the property . . . ."). Courts in both states find that a landlord's obligation to maintain and repair the premises can establish control over the property. Nester v. Anthony Indus., Inc., Civ. A. No. 90-0831, 1991 WL 9000, at *5 (E.D. Pa. Jan. 24, 1991) ("Pennsylvania courts have held that lease provisions giving a landlord some responsibility over repair or maintenance provide evidence of possession and control sufficient to submit the issue

of control to a jury."); Taylor v. Lastres, 847 N.Y.S.2d 139, 140 (App. Div. 2007) ("Control may be evidenced by lease provisions making the landlord responsible for repairs or by a course of conduct demonstrating that the landlord has assumed responsibility to maintain a particular portion of the premises.").

Where a landlord retains control over the leased premises, both states hold the landlord to a duty to exercise reasonable care to protect people on the property from dangerous conditions. Forgang v. Universal Gym Co., 621 A.2d 601, 603 (Pa. Super. Ct. 1993) ("[A] landlord who retains control is only liable if, by the exercise of reasonable care, the landlord could have discovered the condition and risk involved and made it safe."); Tagle v. Jacob, 763 N.E.2d 107, 108-09 (N.Y. 2001) (citing Basso v. Miller, 352 N.E.2d 868 (N.Y. 1976)) ("[L]andowners owe people on their property a duty of reasonable care under the circumstances to maintain their property in a safe condition."). Both states hold that a landlord can only be held liable if the landlord had "actual or constructive notice" of the dangerous condition. Fitzpatrick v. Consol. Rail Corp., Civ. a. No. 90-2938, 1991 WL 61114, at *4 (E.D. Pa. Apr. 16, 1991) (citing Smith v. M.P.W. Realty Co., 225 A.2d 227, 229 (Pa. Super. Ct. 1967)); Taylor v. United States, 121 F.3d 86, 89-90 (2d Cir. 1997) (citing Gordon v. Am. Museum of Natural History, 492 N.E.2d 774 (N.Y. 1986)). As with any negligence claim, both states also require the plaintiff to prove that the dangerous condition proximately caused his or her injury. Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984); McHale v. Westcott, 893 F. Supp. 143, 147 (N.D.N.Y. 1995).

In all material respects, therefore, both Pennsylvania and New York apply the same substantive standards to analyze the type of tort claim raised in this action. Under either state's law, the resolution of this case will depend on: (1) whether defendant retained control over the leased premises, such as by assuming responsibility for repairs; (2) whether a dangerous

condition existed on the leased premises; (3) whether defendant had actual or constructive notice of that dangerous condition; and (4) whether that dangerous condition proximately caused plaintiff's injuries.

Defendant's attempts to demonstrate an actual conflict between Pennsylvania and New York law are unavailing. Defendant argues that Pennsylvania law differs from New York law because Pennsylvania courts hold that landlords have no duty to third parties who are injured on the leased premises. In support of this contention, defendant relies on Pennsylvania cases stating that, "[a]s a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons." Jones v. Levin, 940 A.2d 451, 454 (Pa. Super. Ct. 2007). However, it is not clear in this case whether plaintiff was in fact a third party on the leased premises. Plaintiff's daughter Olga Deykina signed the rental agreement with defendant and specified that seven adults and three children would reside at the property. Defendant testified that he knew Olga Deykina would be staying at the property with other people and that he only requires the number of people, not all of their names, on the lease. Def. Dep. 21-22. Even though plaintiff's name does not appear on the lease, she was one of the other adults that the parties contemplated in the rental agreement. Even if plaintiff were considered a third party, however, Pennsylvania law recognizes several exceptions to the general rule that landlords have no duty to third parties injured on the premises. Under one of those exceptions, a landlord can be liable for injuries to third parties "if he has reserved control over a defective portion of the demised premises." Henze v. Texaco, Inc., 508 A.2d 1200, 1202 (Pa. Super. Ct. 1986). Therefore, under Pennsylvania law, just as under New York law, a landlord who retains control over the leased premises owes a duty to parties injured on the premises, regardless of whether they are tenants or third parties. Defendant has failed to demonstrate a

material difference between the substantive standards under Pennsylvania and New York law.[2]

Accordingly, since there is no actual conflict between the New York and Pennsylvania law governing this tort claim, there is no need to proceed to the second stage of the choice of law analysis, and the court will apply New York law.

## III.    Defendant's Liability

Under New York law, to establish a negligence claim against a landowner for injuries sustained on his or her property, the plaintiff must demonstrate "that the landowner controls the property, that a defect exists, and that the defect causes plaintiff's injuries." McHale, 893 F. Supp. at 147 (citing Turrisi v. Ponderosa, Inc., 578 N.Y.S.2d 724, 726 (App. Div. 1992)). On a motion for summary judgment, the court must make "the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made out a case sufficient in law to support a favorable jury verdict." Basso, 352 N.E.2d at 873. "Summary judgment is difficult to obtain in negligence actions because whether conduct is 'negligent' is a factual determination in all but the most extreme situations." Ortiz v. Rosner, 817 F. Supp. 348, 350 (S.D.N.Y. 1993). However, "[t]hough courts are hesitant to grant summary judgment in

---

[2] None of the other Pennsylvania cases cited by defendant are in conflict with New York law. Defendant cites a number of Pennsylvania cases for the proposition that out-of-possession landlords are not liable for injuries sustained on the premises. However, defendant omits the exception to this rule, also cited in all of these cases: out-of-possession landlords can be held liable where they reserve control over the leased premises. Therefore, all of these cases simply state the same general rule and exception discussed above, which applies under both New York and Pennsylvania law. See Cater v. Starbucks Corp., Civil Action No. 07-2660, 2010 WL 3195774, at *5 (E.D. Pa. Aug. 10, 2010); Sentry Cas. Co. v. Spray Prods. Corp., Civil Action No. 06-cv-1664, 2008 WL 205229, at *2-*3 (E.D. Pa. Jan. 23, 2008); Deeter v. Dull Corp., 617 A.2d 336, 338-39 (Pa. Super. Ct. 1992); Pierce v. Phila. Hous. Auth., 486 A.2d 1004, 1005 (Pa. Super. Ct. 1985). Defendant also relies on two cases where Pennsylvania courts held that landlords had no duty to third parties injured on the property. However, in both of those cases, responsibility for maintenance and repairs rested with the tenant. See Parquet v. Blahunka, 84 A.2d 187, 188 (Pa. 1951) ("Under the terms of the lease, the tenants were given exclusive possession and covenanted to make all necessary repairs."); Kobylinksi v. Hipps, 519 A.2d 488, 491 (Pa. Super. Ct. 1986) ("[T]here was no testimony to the effect that Appellant, as landlord, covenanted to make any major repairs to the building throughout the leasehold period."). The results in those cases would not apply to a case where the landlord had responsibility for making repairs and therefore retained control over the leased premises.

negligence cases, the mere fact that a case involves a claim of negligence does not preclude a granting of summary judgment." Hood v. Regency Maritime Corp., No. 99 Civ. 10250(CSH), 2000 WL 1761000, at *2 (S.D.N.Y. Nov. 30, 2000) (internal quotation marks omitted).

## A. Defendant's Control of Leased Premises

As discussed above, an out-of-possession landlord has no duty to people injured on the property unless the landlord retains control over the leased premises. See, e.g., Dominguez, 756 N.Y.S.2d at 639. It is well settled that control of the property can be established by "lease provisions making the landlord responsible for repairs." Taylor, 847 N.Y.S.2d at 140; accord Lee v. Second Ave. Vill. Partners, LLC, 953 N.Y.S.2d 259, 260 (App. Div. 2012). Here, the plain language of the rental Agreement makes defendant responsible for repairs. The provision of the agreement entitled "Repairs" instructs tenants to call defendant "immediately" if a problem arises, and defendant promises to "make a reasonable effort to have any necessary repairs made as soon as possible." Wright Decl., Ex. E, at 2. Plaintiff has adduced sufficient evidence to demonstrate that defendant retained control over the leased premises by taking responsibility for repairs and maintenance.[3]

## B. Existence of Defect

For the next element, plaintiff must establish the existence of a defective condition on the premises. In plaintiff's complaint, she asserts that the stairs at the property were defective

---

[3] Defendant asserts that plaintiff has failed to establish this element because "'[r]eservation of control' is a term of art which applies in very specific circumstances not present here." Def.'s Reply 3-4. In particular, defendant asserts that the staircase at issue was accessible only to the tenants during the period of the lease, so defendant could not have retained control over that area of the premises. Id. at 4. However, under the clear terms of the rental agreement, if a maintenance problem arose with the staircase, the tenants would be expected to notify defendant, and defendant would then be responsible for making the necessary repairs. New York law holds that a landlord's obligation to perform repairs and maintenance can establish control over the leased premises. The same rule would apply if the court had accepted defendant's contention that Pennsylvania law governs this action. See Sentry Cas. Co., 2008 WL 205229, at *3 (while landlords generally have no duty to third parties injured on the premises, courts have applied an exception "in instances where a landlord has reserved, by way of maintenance obligations, control over the portion of the premises at issue"); Farmers Export Co. v. Energy Terminals, Inc., 673 F. Supp. 715, 718 (E.D. Pa. 1987) (language of lease agreement is "a significant factor in resolving the question of control," and covenants requiring landlord to repair or maintain premises are "strong indicia of control").

because the steps were "unevenly constructed" and lacked handrails on both sides. Compl. ¶ 5.[4]

In support of his motion for summary judgment, defendant has submitted an expert report from engineer Paul J. Angelides asserting that the stairs did not have a structural defect. Wright Decl., Ex. G. According to Angelides's inspection, the staircase is about 3 feet and 4.5 inches wide and consists of eleven risers, or vertical steps, with a landing at the bottom and another step down from the landing to the ground floor. Id. at ECF 2. The height of the risers ranges from 7.75 to 8.75 inches, while the tread, or depth, of each step ranges from 10.125 to 11.5 inches. Id. at ECF 2-3. The stairs have a handrail on the left side going down that ends about 1 inch before "the vertical projection of the riser on the last step," while the right side of the stairs is open. Id. at ECF 2. Angelides found that no state-enforced building code governed construction of single-family dwellings when the house was constructed in 1980, so he consulted a 1979 code from the Council of American Building Officials as "representative of the industry standards which were generally accepted at the time the building was constructed." Id. at ECF 3. The 1979 code required a maximum riser height of 8.25 inches and a minimum tread depth of 9 inches. Id. at ECF 4. Angelides found that the treads and risers of the steps at the bottom of the staircase, where plaintiff testified that she fell, conformed to the 1979 code. Id. The 1979 code required handrails on "at least one side of stairways of three (3) or more risers," but it did not include "any requirements concerning handrail continuity." Id. Angelides concluded that "the termination of the handrail 1 inch short of the vertical projection of the riser on the last step is a

---

[4] Plaintiff also testified in her deposition that she thought she slipped because "there was too much varnish" on the stairs and "[t]hey were too slippery." Pl. Dep. at 35. To the extent that plaintiff seeks to assert that the slippery surface of the stairs constituted a defective condition, this assertion has been refuted by the evidence. Defendant's expert measured the static coefficient of friction on the surface of the steps and found that it conformed with "generally accepted industry standards," so he concluded that "the stair walking surfaces cannot be considered slippery." Wright Decl., Ex. G, at ECF 4. Plaintiff's expert report does not address this issue, so defendant's expert report is unrebutted on this point. Plaintiff's brief opposing the summary judgment motion also gives no indication that plaintiff intends to rely on the slippery surface of the stairs as an alleged defect. Therefore, I will not consider the slippery surface of the stairs as a potential defective condition.

de minimis condition that cannot be cited as a factor that contributed to the accident." Id. The 1979 code also required guardrails on "[o]pen sides of stairs with a total rise of more than thirty (30) inches above the floor." Id. at ECF 4. Angelides stated that, even though the lack of a guardrail on the open right side of the staircase violated this provision, this defect "is completely irrelevant to the circumstances of the accident, as testified by the Plaintiff." Id. Overall, Angelides concluded "within a reasonable degree of engineering certainty that the stair does not contain any defects that can be cited as factors which contributed to the reported slip and fall accident." Id. at ECF 5.

In rebuttal, plaintiff has submitted an expert report from engineer Scott Silberman. Wright Decl., Ex. H. Silberman concluded that the stairs had a "dangerous condition" that "promotes a slip type of fall," because the steps had "narrow treads combined with high risers," while the handrail "stops prematurely and does not provide protection for any person using the bottom of this stairway." Id. at ECF 6-7. Specifically, according to Silberman's measurements, the riser height of the steps ranged from 7.25 to 8.62 inches, while the tread depth ranged from 8.37 to 11 inches. Id. at ECF 5. Silberman compared these measurements to 2000 and 2009 editions of the residential building code, which he considered "evidence of the good and accepted practice for stairway construction in single family homes." Id. at ECF 8. Silberman found that the stairs did not comply because both the 2000 and 2009 codes required a maximum riser height of 7.75 inches and a minimum tread depth of 10 inches. Id. Silberman also found that the handrail on the left side of the stairs did not comply with the 2000 and 2009 building codes, which both required handrails to be "continuous" for the full length of the stairs "from a point directly above the top riser of a flight to a point directly above the lowest riser of the flight." Id. at ECF 8-9. Silberman concluded "with a reasonable degree of engineering certainty, that the

combination of the above defects and violations definitely contributed to the unsafe condition present at this location" and was "a significant and substantial contributing factor in Nelya Deykina's accident." Id. at ECF 9.

Defendant argues that the court should not consider Silberman's expert report. Defendant contends that Silberman's assertions are "speculative or unsupported by any evidentiary foundation" because he relied on building codes that were not in effect when the house was built. Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def's Mem."), Dkt. #32, Ex. 11, at 10-11. Defendant also argues that expert testimony is inappropriate in this case because an assessment of whether the stairs were defective "does not require professional or scientific knowledge or skill that is outside the range of ordinary training or intelligence." Id. at 12. Both of these contentions are without merit. Silberman based his conclusions on his training and experience as an engineer, and he has been qualified as an expert witness in numerous cases. See, e.g., Melini v. 71st Lexington Corp., No. 07 Civ. 701(JCF), 2009 WL 413608, at *5 (S.D.N.Y. Feb. 13, 2009) (finding that Silberman's "education and experience in engineering and building code compliance give him an adequate background to offer his opinion in this matter"). Silberman's report did not suggest that the 2000 and 2009 building codes constituted enforceable standards in this case; instead, he cited the codes as evidence of accepted engineering practices. To the extent that defendant disagrees with Silberman's reliance on these codes, "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of rebutting his conclusions. Daubert v. Merrell Dow Pharm., 509 U.S. 579, 596 (1993). Expert testimony is clearly relevant in this case to determine whether the stairs had an engineering defect that caused plaintiff's fall. Numerous courts have considered expert testimony in cases where, as here, the plaintiffs have alleged a structural

defect. See, e.g., Melini, 2009 WL 413608, at *5; Smith v. N.Y. Enter. Am., Inc., No. 06 Civ. 3082(PKL), 2008 WL 2810182, at *5 (S.D.N.Y. July 21, 2008); McHale, 893 F. Supp. at 148. At the summary judgment stage, the court denies defendant's request to preclude Silberman's expert report.

The reports of defendant's and plaintiff's experts, taken together, are sufficient to create a triable issue of fact regarding whether the stairs have a defective condition. "[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury." Trincere v. Cnty. of Suffolk, 688 N.E.2d 489, 490 (N.Y. 1997) (internal quotation marks omitted); accord Alig v. Parkway Parking of N.Y., Inc., 829 N.Y.S.2d 242, 244 (App. Div. 2007). Here, the undisputed evidence shows that the stairs had no guardrail on the open right side, while the handrail on the left side ended about one inch before the edge of the last step.[5] The parties' expert reports provide differing assessments of whether the handrail, riser height, and tread depth of the stairs violate accepted engineering practices and constitute defective conditions. Therefore, the record reflects a factual dispute regarding whether the stairs have a structural defect, and it must be left to a jury to resolve the conflict between the two expert reports. See Smith, 2008 WL 2810182, at *5 (finding declaration of plaintiff's expert that entranceway violated building code and was "improper and unsafe" sufficient to raise issue of fact regarding existence of structural defect in stairs); McHale, 893 F. Supp. at 148 (finding testimony from plaintiff's structural engineer that stairs did not comply with building code

---

[5] Defendant's expert report provided the measurement of the handrail. While plaintiff's expert report stated that the handrail does not extend continuously for the full length of the stairway, plaintiff's expert did not provide any specific measurement of the distance from the end of the handrail to the edge of the last step. Therefore, I will treat the measurement in defendant's expert report as undisputed. In her testimony, plaintiff testified that the handrail stopped "three or four steps" before the bottom of the staircase, Pl. Dep. 23-24, but her description from memory conflicts with the measurements taken by defendant's expert and with the photographs submitted by the parties, Wright Decl., Ex. F.

"sufficient to raise an issue of fact regarding the existence of a longstanding structural defect").

### C.    Defendant's Actual or Constructive Notice of Defect

In addition to establishing the existence of a defective condition on the premises, plaintiff must also show that defendant had actual or constructive notice of that defective condition. Taylor, 121 F.3d at 89-90.

 "A defendant has actual notice of a defect if he created the condition or received reports of it such that he has actual knowledge of the defect's existence." McHale, 893 F. Supp. at 148. Here, defendant did not create the condition, since he testified that the stairs already existed on the property when he purchased the house in 2007 and that he did not alter them in any way. Defendant also testified that he had not received any complaints about the handrail or reports of people having difficulty using the handrail prior to plaintiff's fall. On this record, there is no basis to conclude that defendant had actual notice of a structural defect in the stairs. See Smith, 2008 WL 2810182, at *5 (finding landlord had no actual notice of structural defect of steps where plaintiff never notified defendants about the condition and "no other testimony elicited or evidence produced during discovery points to defendants having received any report or complaint about the steps"); McHale, 893 F. Supp. at 148-49 (finding landlord had no actual notice of structural defect of stairs where the stairs had not been modified by defendant, annual inspections had not discovered a defect, no prior complaints about the stairs had been made, and plaintiff had used the stairs frequently before the accident without incident); Mokszki v. Pratt, 786 N.Y.S.2d 222, 224 (App. Div. 2004) (finding no proof of actual notice of defect in handrail where plaintiff adduced "no evidence that defendants ever received complaints regarding the handrail or that, prior to this accident, plaintiff or others had difficulty negotiating the steps because of the handrail's condition") (internal citations omitted).

Even if defendant lacked actual notice of a structural defect in the stairs, however, plaintiff could still recover if a jury concluded that defendant should have known about the defect. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." Gordon, 492 N.E.2d at 775; accord McHale, 893 F. Supp. at 148. Here, there can be no question that any alleged structural defect in the stairs existed for a sufficient length of time prior to the accident, since defendant purchased the house in 2007 and made no changes to the stairs prior to plaintiff's fall in 2011. The element of constructive notice therefore turns on whether the alleged structural defects were "visible and apparent."

Defendant might be entitled to summary judgment on this element if the only structural defects alleged were the narrow treads, high risers, or handrail on the left that ended one inch before the edge of the last step. Courts have declined to impute constructive notice to defendants where the allegedly defective conditions deviate from accepted practices by relatively small dimensions that could only be detected through structural analysis. See McHale, 893 F. Supp. at 149 (finding defendant had no constructive notice of variance in riser heights and improper height of hand railing because "the only way defendants could have discovered the defect was by undertaking a structural analysis similar to the one [plaintiff's expert] performed," and "plaintiffs did not allege any fact or occurrence that would have alerted defendants to the need for such analysis"); Mokszki, 786 N.Y.S.2d at 224 (finding defendant had no constructive notice where alleged defect was that handrail ended on second step from bottom).

However, plaintiff has also alleged another structural defect: the lack of any rail on the open right side of the stairs. In plaintiff's complaint, she asserts that the stairs were defective because they lacked handrails on both sides. Defendant's own expert report acknowledged that

the lack of a guardrail on the open right side violated the building codes in existence when the stairs were constructed. The lack of any guardrail altogether is clearly visible and apparent to any observer and does not require any type of structural analysis to discover. Courts applying New York law have repeatedly declined to grant summary judgment for defendants on the element of constructive notice when plaintiffs allege this type of readily obvious structural defect. See Melini, 2009 WL 413608, at *8 (denying summary judgment regarding constructive notice where excessive slope of ramp was "extreme enough to create a material issue of fact as to whether it was easily discoverable by the defendants"); Smith, 2008 WL 2810182, at *6 (finding triable issue of fact regarding constructive notice where door of store opened directly onto step down with no landing because "a jury could reasonably find that the Owners had notice of the 'plainly visible' defective stairs without the need for any structural analysis"); Carter v. State, 990 N.Y.S.2d 333, 335 (App. Div. 2014) (finding triable issue of fact regarding constructive notice where handrail did not start until third step down); Ennis-Short v. Ostapeck, 890 N.Y.S.2d 215, 216 (App. Div. 2009) (finding triable issue of fact regarding constructive notice where "[p]ictures and measurements of the staircase show that there was no handrail on the outside wall, the handrail on the inside wall was not continuous, the break in the handrail occurred at the wedge-shaped portion of the staircase [where plaintiff fell], and the beginning of the second railing was too low to be usable by someone walking down the stairs"); Palmer v. 165 E. 72nd Apartment Corp., 819 N.Y.S.2d 105, 105-06 (App. Div. 2006) (denying summary judgment where plaintiff's deposition testimony "demonstrated that the segment of the staircase where the plaintiff fell did not have a handrail").

Accordingly, viewing the record in the light most favorable to plaintiff, the evidence raises a triable issue of fact regarding whether defendant had constructive notice of a structural

defect in the stairs. The fact that the handrail on the left side ends one inch before the edge of the final step, taken alone, might not be sufficient to survive summary judgment. However, a jury could find that defendant should have been on notice that the one-inch gap in the handrail on the left, combined with the readily apparent lack of any guardrail on the right, created a dangerous condition on the stairs.[6] Therefore, defendant is not entitled to summary judgment on the issue of constructive notice.

### D.     Proximate Cause

Finally, plaintiff must establish that the alleged structural defects in the stairs proximately caused her injuries. To demonstrate proximate cause, a plaintiff must show that "a fall was a natural and probable consequence of the conditions present on the stairs." Gordon, 492 N.E.2d at 775. "Although proximate cause can be inferred from circumstances underlying the accident and need not be demonstrated by direct evidence, mere speculation as to the cause of injury is insufficient." Ascher v. Target Corp., 522 F. Supp. 2d 452, 456 (E.D.N.Y. 2007) (collecting cases); accord Smith, 2008 WL 2810182, at *6; Ellis v. Cnty. of Albany, 613 N.Y.S.2d 983, 984-85 (App. Div. 1994). "In a trip and fall case, a plaintiff's inability to identify the cause of his or her fall is fatal to his or her cause of action, since, in that instance, the trier of fact would be required to base a finding of proximate cause upon nothing more than speculation." Louman v. Town of Greenburgh, 876 N.Y.S.2d 112, 114 (App. Div. 2009) (internal quotation marks, citations, and alterations omitted).

Defendant argues that plaintiff cannot establish proximate cause because she could not

---

[6] In his reply brief, defendant asserts that it is somehow inconsistent for plaintiff to argue, on the one hand, that expert testimony is necessary to determine whether the stairs had a structural defect and, on the other hand, that defendant, a lay person, had constructive knowledge of the defect's existence. Def.'s Reply 1, 4. In fact, though, there is nothing inconsistent about this position. New York courts find a triable issue of fact regarding constructive notice where a defect would be visible and apparent to a layperson. However, expert testimony is clearly still relevant to resolve the ultimate questions of liability: whether a defect exists and whether it proximately caused the plaintiff's injuries.

explain in her testimony why she fell on the stairs, so any determination regarding causation would be speculative. Defendant points to a portion of plaintiff's deposition testimony in which she stated that she thought "the reason" she fell was that "there was too much varnish" on the stairs and "[t]hey were too slippery." Pl. Dep. at 35. As defendant argues, plaintiff did not attribute her fall to any structural defects in the stairs. Def.'s Mem. 14-16. Defendant also argues that plaintiff testified that she tripped on the second or third step from the bottom, and the record shows the steps did have a handrail on the left side at that part. Therefore, defendant asserts, it would be "speculation or guesswork" to assert that plaintiff could have stopped her fall if the handrail had extended farther. Id. at 18.

While I find it a close question, I am obligated to draw all reasonable inferences in favor of plaintiff, and I conclude that the record reflects a triable issue of fact on the issue of proximate cause. Even though plaintiff stated in her testimony that she thought the slippery surface of the steps caused her to fall, she also testified that she tried to reach for the handrail to stop her fall and could not reach it. When viewed in its entirety, plaintiff's deposition testimony is sufficient to raise the issue of whether the length of the handrail on the left side, taken together with the absence of any guardrail on the open right side, proximately caused her fall. To be sure, plaintiff did not mention the lack of a guardrail on the right side in her testimony, and her opposition brief to defendant's summary judgment motion asserts that the lack of a continuous handrail on the left side proximately caused her fall. However, based on plaintiff's testimony that she tried unsuccessfully to stop her fall using the handrail on the left, a jury could reasonably infer that plaintiff would have also tried to use a handrail or guardrail on the right side if one had existed.

New York courts have frequently held that where, as here, a plaintiff testified that she attempted to reach for a handrail in order to stop her fall, she has created a triable issue of fact

regarding whether a defective or absent handrail proximately caused her injuries. See Antonia v. Srour, 893 N.Y.S.2d 186, 187 (App. Div. 2010) ("Even if the plaintiff's fall was precipitated by a misstep, given her testimony that she reached out to try to stop her fall, there is an issue of fact as to whether the absence of a handrail was a proximate cause of her injury.") (collecting cases); accord Carter, 990 N.Y.S.2d at 336; Palmer, 819 N.Y.S.2d at 106; Asaro v. Montalvo, 812 N.Y.S.2d 558, 559 (App. Div. 2006); Viscusi v. Fenner, 781 N.Y.S.2d 121, 122 (App. Div. 2004); Cruz v. Lormet Hous. Dev. Fund Corp., 776 N.Y.S.2d 842, 843 (App. Div. 2004).[7] Here, too, I find that plaintiff's testimony regarding her attempt to grab the handrail is sufficient to create a triable issue of fact regarding whether the length of the handrail on the left side and the absence of a guardrail on the open right side proximately caused her injuries.

---

[7] Defendant cites a number of cases where New York courts found that plaintiffs' allegations that defective handrails caused their falls were too speculative to establish proximate cause. See, e.g., Ghany v. Hossain, 884 N.Y.S.2d 125, 125 (App. Div. 2009) ("Even if the stairway and handrail were defective, as the expert opined, the Supreme Court properly determined that his conclusion linking the alleged defects to the decedent's fall were purely speculative."); Tutunjian v. Cove Landing on Sound Homeowners Ass'n, 833 N.Y.S.2d 110, 111 (App. Div. 2007) ("[T]he plaintiff failed to raise a triable issue of fact as to whether the absence of a second handrail was a proximate cause of the accident."). However, proximate cause is necessarily a fact-specific determination, and defendant has failed to show that the facts of any of those cases are comparable to this one. Instead, I find this case analogous to the numerous cases where New York courts have held that a plaintiff's attempt to use a handrail creates a triable issue of fact regarding whether the lack of a handrail proximately caused the injury.

## CONCLUSION

For the foregoing reasons, the record reflects triable issues of fact regarding whether defendant retained control over the leased premises, whether the staircase in the house had a structural defect, whether defendant had constructive notice of the defective condition, and whether the defective condition caused plaintiff's injuries. Accordingly, plaintiff has adduced sufficient evidence to proceed to a jury on each of the elements of her negligence claim, and defendant's motion for summary judgment is denied.

SO ORDERED.

__/s/_____
Allyne R. Ross
United States District Judge

Dated:        September 15, 2014
              Brooklyn, New York